**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| FELECIA ROCHELLE DONALD-COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTAGE LLC and U.S. BANK NATIONAL ASSOCATION,<br><br>Defendants. | Case No. 17-11915<br>Hon. Terrence G. Berg |

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION TO STAY AND TOLL THE EXPIRATION OF THE REDEMPTION PERIOD (DKT. 6)**

### I. Introduction

In this lawsuit Plaintiff Felecia Donald-Coleman seeks to quiet the title to a property that Defendant Nationstar Mortgage has foreclosed upon and Defendant U.S. Bank has purchased at a sheriff's sale. Plaintiff filed the lawsuit in state court, and Defendants recently removed the case to this Court. Plaintiff has filed a motion seeking a temporary restraining order (TRO) and a preliminary injunction to stay the redemption period for the property. Defendants oppose the motion. For the reasons outlined

below, Plaintiff's motion with respect to her request for a TRO is **DENIED AS MOOT** and Plaintiff's motion with respect to her request for a preliminary motion is **DENIED**.

## II. Background

In 2005, Plaintiff purchased with her former husband, Alex Coleman, property located at 21401 Eastlawn St., Saint Clair Shores, MI 48080. Dkt. 6-2, Pg. ID 211. They obtained a mortgage from FMC Capital, LLC. Dkt. 6-2, Pg. ID 228. This mortgage was then assigned and re-assigned to various entities, and ultimately belonged to U.S. Bank. Dkt. 6-2, Pg. ID 221. Nationstar is the servicer of U.S. Bank, meaning Nationstar was responsible for conducting and supervising the foreclosure process. Dkt. 6-2, Pg. ID 214.

Plaintiff and Coleman separated in February of 2013 and divorced in August of 2016. Dkt. 6, Pg. ID 171. They stopped making payments on the mortgage in November, 2013. Dkt. 1-2, Pg. ID 25.[1] On November 4, 2016—three years after Plaintiff and Coleman stopped paying their mortgage—Nationstar sent Plaintiff a letter stating that she and Coleman were in foreclosure and that a sheriff's sale was scheduled for December 2, 2016. Dkt. 6-2, Pg. ID 256. Plaintiff responded (presumably by mail, as that is how the other

---

[1] The cited evidence is a notification-of-default letter that Nationstar addressed only to Coleman. But neither Plaintiff nor Defendants dispute that Plaintiff and Coleman were both on the mortgage, meaning Plaintiff was also obligated to pay the mortgage.

2

communications between the parties took place, but the record is unclear on this fact) that she was unable to prevent the sheriff's sale by satisfying her mortgage obligations because of the divorce litigation. Dkt. 6, Pg. IDs 171-72. Nationstar went ahead with the foreclosure anyway, and the sheriff's sale took place on December 2, 2016. Dkt. 6, Pg. IDs 171-72.

Nationstar notified Plaintiff by mail that the redemption period—six months during which the property owner can prevent loss of title to the property by paying the purchaser (in this case, U.S. Bank) the foreclosure sale price in addition to any interest, taxes, and insurance costs that accumulated during the window—would end on June 2, 2017. Dkt. 6-2, Pg. ID 258; see also Mich. Comp. Law § 600.3240 (creating six-month redemption period).

Halfway through the redemption period (on March 3, 2017), Plaintiff entered into a Consent Judgment of Divorce in which Plaintiff and Coleman agreed that he would receive title to the property (subject to the outstanding mortgage that was in foreclosure) while she would receive the right to redeem the property.[2]

---

[2] It is unclear how Coleman derived any benefit from this agreement because the redemption period had already started to run. Thus it would seem that there were only two possible outcomes: (1) if Plaintiff did not redeem the property, U.S. Bank would receive title to the property once the redemption period expired, or (2) if Plaintiff did redeem the property, Coleman would be required to

3

Dkt. 6-2, Pg. ID 236. Thus if Plaintiff redeemed the property, Coleman would be legally obligated to file a Quit Claim Deed assigning the property to Plaintiff. Dkt. 6-2, Pg. ID 238.

One day before the end of the redemption period, Plaintiff filed suit in Macomb County Circuit Court, seeking to be awarded title to the property and also seeking an equitable extension of the redemption period. Dkt. 1-2, Pg. ID 12. Plaintiff also filed an ex parte motion for a TRO and a preliminary injunction, Dkt. 6-1, Pg. ID 188, arguing that the redemption period should have started on March 3, 2017 (the date the Consent Judgment of Divorce was filed), not December 2, 2016 (the date of the sheriff's sale). Dkt. 6-2, Pg. ID 193-94. The state court issued a TRO and scheduled a hearing so Defendants could appear and contest Plaintiff's request for a preliminary injunction. Dkt. 6-1, Pg. ID 200.

Defendants then removed the case to this Court, three days before the hearing would have taken place. Dkt. 1-4, Pg. ID 75. And upon removal, Plaintiff filed a new motion for a TRO and a preliminary injunction. Dkt. 6, Pg. ID 161.

The Court concludes that oral argument would not help resolve Plaintiff's motion. So the Court will decide the motion based solely on the parties' written submissions. See E.D. Mich. LR 7.1(f).

---

assign her the title. Under either outcome, Coleman would obtain nothing.

## III. Standard of Review

A court may issue a TRO or a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The purpose of a TRO is to maintain current circumstances between parties—to press "pause"—until the Court has an opportunity to determine whether it will issue a preliminary injunction. *See First Tech. Safety Sys. Inc. v. Depinet,* 11 F.3d 641, 650 (6th Cir. 1993).

When determining whether to issue a preliminary injunction, the Court considers and balances four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether public interest would be served by issuance of a preliminary injunction." *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) (internal quotations omitted).

The Court must make a finding on each of the four factors unless consideration of fewer factors so clearly resolves the motion that additional findings would not change the outcome. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). For example, a finding that there is "simply no likelihood of success on the merits" is generally sufficient to end the inquiry. *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015).

## IV. Analysis

Plaintiff has requested both a TRO and a preliminary injunction. Dkt. 6, Pg. ID 161. The Court will address each request separately, starting with the request for a TRO.

### a. Temporary Restraining Order

Defendants take the position that the state court's TRO expired by its own terms on June 16, 2017, which was 14 days after the date it was entered by Macomb County Circuit Judge Kathryn Viviano, on June 2, 2017. Dkt. 6-1, Pg. ID 200-01. Under Michigan Court Rule 3.310(B)(3), a TRO endures for only 14 days unless it is extended by the court. But the problem with Defendants' position is that they removed the case to federal court on June 16, 2017—the 14th day of the state court-issued TRO, the last day when it was still in effect. Once a case has been removed to federal court, federal procedural law takes the place of state procedural law. *See Granny Goose Food Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423 (1974). And under federal procedural law, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Defendants elected to remove the case before the TRO expired, and before the state court could hold a hearing on Plaintiff's request for a preliminary injunction and

6

then determine whether to dissolve the TRO or to convert it into a preliminary injunction. So the state court's TRO remains in effect. Consequently, Plaintiff's motion seeking the issuance of a TRO is **DENIED AS MOOT**.

### b. Preliminary Injunction

To determine whether Plaintiff is entitled to a preliminary injunction, the Court will apply the four-factor test outlined above. Because that test requires the Court to deny Plaintiff's motion with respect to her request for a preliminary injunction, the Court need not address whether Plaintiff has satisfied additional requirements of securing a preliminary injunction, such as posting a security for the duration of the injunction. See Fed.R.Civ.P. 65(c).

### i. Likelihood of Success on the Merits

To begin, the Court must examine Plaintiff's claims and evaluate the likelihood that Plaintiff will succeed on each of them. *See Six Clinics,* 119 F.3d at 400. Here, Plaintiff has brought three claims: (1) "Quiet Title," (2) "Equitable Estoppel," and (3) "Injunction and Other Relief." Dkt. 1-2, Pg. IDs 15-17.

As a preliminary manner, none of these claims are independent causes of action. *Jarbo v. Bank of N.Y. Mellon*, 587 Fed.Appx. 287, 290 (6th Cir. 2014) ("[Q]uiet title is a remedy, not a freestanding claim. Like a request for an injunction or disgorgement, a request for quiet title is only cognizable when paired with some recognized

cause of action"); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 (Mich. App. Ct. 2006) ("It is well established under Michigan law that equitable estoppel is not a cause of action unto itself, it is available only as a defense"); *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. App. Ct. 2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action"). And as suggested by its very name, "other relief" (the second half of Plaintiff's third claim) is likewise not an independent cause of action. A remedy cannot itself support a cause of action; a plaintiff must bring a viable cause of action in order to be entitled to a remedy. And Plaintiff has not paired her claims with a standalone cause of action, such as a claim for wrongful foreclosure, so she has no likelihood of success on the merits of her case.

Michigan law does provide a statutory mechanism for quiet title actions: any person who claims any right or interest in the possession of land can bring an action to quiet title against any other person who claims an inconsistent interest. Mich. Comp. Laws § 600.2932(1). A plaintiff may bring a cause of action for quiet title, but, as the Sixth Circuit recognized in *Jarbo*, only if she also brings an independent cause of action. On these facts, however, even if Plaintiff had paired her quiet-title claim with a standalone claim, she would still have no likelihood of success on the merits of her quiet-title claim.

To state a claim under Mich. Comp. Laws § 600.2932(1), a plaintiff must allege "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." Mich. Ct. Rule 3.411(B)(2). And to succeed on that claim, a plaintiff must prove that her interest *is* superior to the defendant's interest.

Plaintiff's argument that this factor weighs in her favor is contained in a single statement: "Since the redemption period will expire in violation of Equitable Estoppel the Plaintiff has a great likelihood of success on the merit [sic] of the case." Dkt. 6, Pg. ID 175 (bold-face emphasis removed). This argument does not carry the day for Plaintiff for several reasons. First, this statement does not show that there is a strong likelihood of success on the merits of establishing the elements of a quiet title claim, it merely incants the magic words of Plaintiff's second claim ("equitable estoppel") as if doing so blocks the inferior spell of an "expired redemption period." Second, equitable estoppel is a defense to a lawsuit, not a cause of action and not a law that may be "violated" by the expiration of a redemption period. And third, Plaintiff fails to provide any legal support for this argument.[3] Thus Plaintiff has not shown that this factor weighs in her favor.

---

[3] Defendants also address this factor in their response, and argue that Plaintiff's claim for quiet title fails as a matter of law because

Apart from these flaws in Plaintiff's position, this factor weighs in Defendants' favor because Plaintiff has failed to state a claim for quiet title. As noted above, Plaintiff must allege "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." Mich. Ct. Rule 3.411(B)(2). Plaintiff alleges the interest she claims in the property and the interest Defendants claim in the property, Dkt 1-2, Pg. ID 14, but she does not allege facts establishing that her interest is superior to Defendants'. Instead, she alleges that:

- She could not redeem the property during her divorce proceedings;
- She informed Defendants of this;
- Defendants knew or should have known that she could not stop the sheriff's sale because of her divorce litigation;
- Nationstar continued with the foreclosure proceedings; and
- Therefore, Defendants' actions were "intentionally, unintentionally, [or] negligently" designed to deprive Plaintiff of her property.

Dkt. 1-2, Pg. ID 15. None of these allegations state that Plaintiff's interest is superior to Defendants' interests in the property—indeed they do not relate in any way to the nature of Plaintiff's interest in

---

Plaintiff has failed to establish a legal interest in the property, let alone a superior claim to the property. Dkt. 9, Pg. ID 278. This is also correct.

the property. Plaintiff offers no explanation of why her divorce litigation prevented her from stopping the sheriff's sale, and fails to explain how any such sheriff's-sale prevention would then render her interest in the property superior to Defendants'. Without such explanation, Plaintiff has failed to state a claim for quiet title.[4] Thus the "likelihood of success on the merits" factor weighs in Defendants' favor because Plaintiff has not stated a claim, much less one she could succeed on.

The Court need go no further in its factor-balancing analysis; Plaintiff's motion with respect to her request for a preliminary injunction must be **DENIED**. Nevertheless, the Court will address the remaining three factors.

### ii. Irreparable Harm

In order to make a finding of irreparable harm, the Court must find that the injury is both certain and great and that the injury is actual, not merely theoretical. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. E. F. Hutton & Co., Inc.*, 403 F.Supp. 366, 343 (E.D. Mich. 1975).

---

[4] The Court could try to guess the reasons why the divorce litigation prevented Plaintiff from stopping the Sheriff's sale—perhaps it was due to a lack of funds or because of the complexity of coordinating with a co-mortgagor-spouse during divorce proceedings—but the reasons themselves are not necessarily relevant unless they state facts that suggest Plaintiff had a legal interest in the property that is superior to Defendants'. Here, there is no such suggestion.

11

Plaintiff argues that "the irreparable harm is obvious" because Plaintiff will lose the ability to redeem the property if the redemption period expires. Dkt. 6, Pg. ID 175.

Defendants respond that Plaintiff has failed to demonstrate irreparable harm because the redemption period has already expired. Dkt. 9, Pg. ID 281. Defendants base this argument on a Michigan state-court procedural rule, which provides that a TRO granted in state court will not last longer than fourteen days. Mich. Ct. R. 3.310(B)(3). Defendants also argue that Plaintiff has alternative housing pursuant to her Judgment of Divorce. Dkt. 9, Pg. IDs 281-82. Finally, Defendants argue that any harm Plaintiff is experiencing is a result of Coleman not paying the mortgage and is not attributable to Defendants. Dkt. 9, Pg. ID 282.

This factor weighs in Defendants' favor because, as explained above, the state court's TRO had not yet expired when the case was removed, so it is still in effect, meaning the redemption period will not suddenly come to an end if the Court declines to issue a preliminary injunction. Because "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court," 28 U.S.C. § 1450, Defendants will need to move to dissolve or modify the TRO, or to dismiss the case, in order for the redemption period to begin running again.

12

### iii. Substantial Harm to Others

This factor analyzes whether the granting of a preliminary injunction will harm the non-movant or a third party. *See Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 579 (6th Cir. 2002) (defining the third factor as "substantial harm to others" and analyzing only whether others would have suffered harm if the injunction had issued).

The entirety of Plaintiff's argument that this factor weighs in her favor is that "[t]he harm to the Defendant is considerably less if the Temporary Restraining Order is issued than the harm to the Plaintiff if the Temporary Restraining Order does not issue for the reason that if Plaintiff is evicted from her home the subject property will most probably be vandalized and the value of the property will be greatly diminished." Dkt. 6, Pg. ID 175.

Defendants respond that granting the preliminary injunction will substantially harm U.S. Bank because it has legal title and a right to possession of the property. Dkt. 9, Pg. ID 283.

This factor weighs in Defendants' favor. Rather than arguing that others will be free from harm if the Court grants a preliminary injunction, Plaintiff argues that she will suffer more harm if the Court denies her motion than Defendants will suffer if the Court grants it. But this factor does not involve balancing competing

harms; that happens in the overarching balancing analysis, and occurs only if there will be both harm to Plaintiff if the Court does not issue the injunction (factor two) and harm to others if the Court issues it (factor three). Instead, the only question that the Court must answer is whether issuing the injunction will harm others. See *Overstreet*, 305 F.3d at 579.

Here, although the redemption period has not yet ended, a preliminary injunction would harm both Defendants. U.S. Bank would have to wait longer to assert its right to possess the property to which it has legal title. And Nationstar would have to wait longer to see finality in the foreclosure process that it started last year. Consequently this factor weighs in Defendants' favor.

### iv. Service of Public Interest

In arguing that this factor weighs in her favor, Plaintiff states in conclusory terms that "the granting of this Temporary Restraining Order will further the public interest," and offers no further explanation of why that is so. Dkt. 6, Pg. ID 175.

Defendants respond that Plaintiff's lawsuit is one of many meritless lawsuits filed to stall eviction, and that this large-scale issue runs contrary to the public interest by clogging court dockets and generating needless legal fees. Dkt. 9, Pg. ID 283.

This factor weighs in Defendants' favor. As explained above, none of Plaintiff's causes of action are cognizable, standalone

14

claims. And the argument Plaintiff submitted in support of her emergency motion consists of six mostly conclusory sentences, no legal authority, and no analysis of case or statutory law. Dkt. 1-2, Pg. ID 15.

Further, Plaintiff's case seems based on the premise that her divorce somehow overrode Mich. Comp. Law § 600.3240 and caused the redemption period to start on the date that she signed the Consent Judgment of Divorce rather than on the date of the sheriff's sale, and that the override then somehow elevated her interest in the property to make it superior to Defendants'. The Court knows of no legal authority that supports such a proposition. Plaintiff and Coleman had an obligation to pay their mortgage regardless of whether they were married, separated, or divorced. And when they stopped making those payments, Nationstar was entitled to foreclose on the property; a change in the legal status of Plaintiff's and Coleman's marital relationship does not alter their obligation to pay their mortgage, or the Defendants' right to foreclose if they did not.

As Defendants have correctly noted, the public interest favors the efficient operation of court dockets and the prevention of needless legal fees. An injunction in this case would likely extend this litigation, and would therefore both cause the case to remain on the Court's docket longer than it should and continue to generate needless legal fees in the defense of a case which lacks merit.

The public interest also favors preventing those who fail to pay their mortgages from remaining in financed homes, without cost, at the lenders' expense. An injunction in this case would allow Plaintiff to continue living in the property without paying to be there, which it appears she has been doing for more than three years. This factor also weighs in Defendants' favor.

\* \* \*

To summarize, the second, third, and fourth factors all weigh in Defendants' favor. Thus, although analysis of the likelihood of Plaintiff's success on the merits of her case is sufficient for the Court to deny Plaintiff's motion with respect to her request for a preliminary injunction, reaching and then balancing the remaining factors does not change the outcome of the Court's analysis.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion with respect to her request for a TRO is **DENIED AS MOOT** and Plaintiff's motion with respect to her request for a preliminary injunction is **DENIED**.

**SO ORDERED.**

Dated: July 12, 2017       s/Terrence G. Berg
                           TERRENCE G. BERG
                           UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on July 12, 2017.

s/A. Chubb
Case Manager
